Gregory K. Nelson (SBN 203029)
nelson@weeksnelson.com
Gregory N. Suhr (SBN 328967)
gsuhr@weeksnelson.com
Ariel Redfern (SBN 341314)
ariel@weeksnelson.com
WEEKS NELSON
16236 San Dieguito Rd, Suite 5-20
P.O. Box 675963
Rancho Santa Fe, CA 92067
Telephone: (858) 794-2140

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Sheisgracielou LLC**, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>**Maverickclo.com,** an e-commerce business of unknown organizational form doing business as 'Maverick Clo' and 'Maverick Clothing', Prologis, L.P., a Delaware limited partnership, and DOES 1 through 20, inclusive,<br><br>Defendant. | Case No.:  **'26 CV 4315 LL    GC**<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Complaint

1

Plaintiff Sheisgracielou LLC (hereinafter referred to as "Plaintiff") hereby complains against Defendant Maverickclo.com (hereinafter referred to as "Defendant") and alleges as follows:

**JURISDICTION AND VENUE**

1. Subject matter jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a)-(b), because this action arises under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq*. (the Lanham Act), and because Plaintiff asserts related claims of unfair competition and common law trademark infringement under state law.

2. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as Plaintiff's federal trademark claims under the Lanham Act and derive from a common nucleus of operative fact, such that they would ordinarily be tried in one judicial proceeding.

3. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with the State of California, including purposefully directing its commercial activities at California by promoting and selling the infringing apparel products complained of herein directly to California consumers, maintaining an interactive e-commerce website (https://maverickclo.com) accessible to California residents, and fulfilling and shipping orders of the infringing products to addresses within California and this judicial district, as depicted below. Further, Defendant was notified via written cease-and-desist letters, including on March 27, 2025, that Plaintiff is a California company and that Defendant's sales of counterfeit and copycat apparel infringe Plaintiff's federal and state intellectual property rights. Despite this actual knowledge, Defendant refused to halt its activities and continues to sell the infringing products with knowledge that its tortious conduct directly targets, harms, and causes economic injury to a brand owner residing and doing business in California.    Accordingly, personal jurisdiction is proper under

California's long-arm statute (Cal. Code Civ. Proc. § 410.10) and the United States Constitution.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, Defendant has targeted, marketed, offered for sale, sold, and distributed the infringing products to consumers within this District, which causes consumer confusion and inflicts substantial economic injury on Plaintiff, whose principal place of business and injuries are located in this District.

## THE PARTIES

5.    Plaintiff is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 3240 Canyon View Drive, Oceanside, CA 92058.

6.    Defendant Maverickclo.com ("Maverick") is an e-commerce retail business of unknown legal organizational structure or an unincorporated association

doing business as 'Maverick Clo' and 'Maverick Clothing', operating through the interactive commercial website https://maverickclo.com and associated social media platforms (including Instagram and TikTok), with its principal place of business unknown but operating continuously and systematically in the State of California and this judicial district. According to publicly available records in the domain WHOIS registry, Defendant shields its identity, physical location, and ownership from intellectual property owners and the public by utilizing a proxy domain privacy protection service, Withheld for Privacy ehf, with a registered billing address at Kalkofnsvegur 2, Reykjavik, 101, Iceland.

7.    Plaintiff is informed and believes, and thereupon alleges, that Defendant Prologis, L.P. ("Prologis") is a Delaware limited partnership with its principal place of business at Pier 1, Bay 1, San Francisco, CA 94111. Plaintiff is further informed and believes, and thereupon alleges, that Prologis owns, controls, and manages commercial real property located at 5215 S. Boyle Ave, Vernon, CA, 90058, which it leases to Defendant Maverick for the purpose of operating a business that marketed, advertised, stored, distributed, and/or sold the accused products, including to consumers in this District. Plaintiff is informed and believes, and thereupon alleges, that Prologis knew or should have known of the unlawful conduct occurring on its property and materially contributed to and benefited from such conduct by leasing the premises and deriving rental revenue therefrom.

## FACTUAL BACKGROUND
### Maverick's Infringing Products

8.    Plaintiff is the owner of U.S. Trademark No. 7,326,145 for the wordmark COWBOY PILLOWS for use on "Underwear; Bottoms as clothing; Tops as clothing" (the "'145 Mark"). Plaintiff has sold clothing bearing the '145 Mark since August 2022. The U.S. Trademark Office registered the '145 Mark on March 12, 2024.

9.      Plaintiff uses the '145 Mark on various articles of clothing, including T-Shirts, tank-tops, sweatpants and sweatshirts, shorts, and underwear.  Plaintiff sells these articles on its own website, in its own brick and mortar store, and through various e-commerce platforms.  Plaintiff's articles of clothing featuring the '145 Mark are Plaintiff's most popular products.  Through the sale of these products, Plaintiff has built a substantial following, with over 75,000 followers on TikTok and over 37,000 followers on Instagram.

10.      Some of Plaintiff's products featuring the '145 Mark are pictured below:



11.      Plaintiff caused a cease and desist letter to be sent to Defendant on or about March 27, 2025. Despite receiving the cease and desist letter, Defendant did not halt its unlawful sales; instead, it engaged in a bad-faith attempt to evade trademark infringement liability by minimally changing the text on its products from 'COWBOY PILLOWS' to 'COWBOY CUSHIONS' (available at https://maverickclo.com/products/cowboy-cushions-cropped-baby-tee)      while maintaining the exact same color schemes (such as red script lettering on white or grey fabrics), matching serif typefaces, identical cropped baby tee silhouettes, and Western brand theme to continue trading on Plaintiff's goodwill and customer following.  Because 'pillows' and 'cushions' are legal and semantic synonyms used on identical goods, Defendant's modified mark is confusingly similar and structurally equivalent to Plaintiff's registered '145 Mark.

12.    Defendant sells various tank tops and tee shirts featuring the mark COWBOY CUSHIONS (the "Cushions Infringing Products"). "Cushions" is another name for "pillows." Defendant's Cushions Infringing Products are pictured below:

 

13.    Defendant's initial use of COWBOY PILLOWS constituted a counterfeit of Plaintiff's registered trademark as defined under 15 U.S.C. §§ 1114 and 1127, and its deceptive transition to 'COWBOY CUSHIONS' constitutes willful infringement and a bad-faith effort to pass off its products as those of Plaintiff, and ongoing infringement under 15 U.S.C. § 1114.

14.    Plaintiff is also the originator and owner of the unregistered trademark WILL SHAKE MY ASS FOR COWBOYS, also for use on various apparel items, including tops, bottoms, sweat shirts, hooded sweat shirts, and t-shirts, among other apparel.[1]  Plaintiff has continuously used and sold clothing bearing the mark WILL SHAKE MY ASS FOR COWBOYS in commerce since at least November 30, 2024. Plaintiff has acquired exclusive common law and statutory rights in WILL SHAKE

---

[1]    Plaintiff is also the owner of U.S. Trademark Application Serial No. 98/919,608 for the wordmark WILL SHAKE MY ASS FOR COWBOYS for use on various apparel items, including tops as clothing, bottoms as clothing, sweat shirts, hooded sweat shirts, and t-shirts.  Once this trademark application matures to issuance, Plaintiff will amend the Complaint to assert infringement under 15 U.S.C. § 1114.

MY ASS FOR COWBOYS throughout the United States, as it is inherently distinctive and has acquired secondary meaning associated with Plaintiff.

15.    Plaintiff uses WILL SHAKE MY ASS FOR COWBOYS on various articles of clothing, including T-shirts, tank-tops, sweatpants and sweatshirts, shorts, and underwear.  Plaintiff sells these articles on its own website, in its own brick and mortar store, and through various e-commerce platforms.  Plaintiff's articles of clothing featuring WILL SHAKE MY ASS FOR COWBOYS are Plaintiff's most popular products.  Through the sale of these products, Plaintiff has built a substantial following, with over 75,000 followers on TikTok and over 37,000 followers on Instagram.

16.    Some of the Plaintiff's product featuring the WILL SHAKE MY ASS FOR COWBOYS are pictured below:



17.    Defendant sells various sweatshirts featuring the mark WILL SHAKE MY ASS FOR COWBOYS (the "WILL SHAKE MY ASS FOR COWBOYS Infringing Products," and collectively with the "Cushions Infringing Products," the "Infringing Products").  Defendant's WILL SHAKE MY ASS FOR COWBOYS Infringing Products are pictured below:

 

18.    Defendant's unauthorized marketing and sale of sweatshirts, hoodies, and related apparel featuring the identical mark WILL SHAKE MY ASS FOR COWBOYS infringe Plaintiff's rights in the mark in direct violation of state and federal law.  Defendant's WILL SHAKE MY ASS FOR COWBOYS Infringing Products are identical in design, color scheme (such as using identical distressed white text on dark grey/black fabrics, or bold black text on cream fabrics), and placement of the text on the back panels of the apparel, indicating a direct, intentional copying of Plaintiff's most popular products.  Because Defendant's WILL SHAKE MY ASS FOR COWBOYS Infringing Products incorporate a mark identical to the Plaintiff's mark WILL SHAKE MY ASS FOR COWBOYS on identical apparel goods, Defendant's products constitute infringement and false designation of origin under 15 U.S.C. § 1125, and are specifically designed to deceive consumers, dilute Plaintiff's brand, and usurp Plaintiff's established market share.

19.    Defendant and Plaintiff also use the same marketing channels.  Each party has a substantial social media following and each promotes their products via their social media accounts.  Further, the parties have significant overlap in their target audience.  For example, and without limitation, the parties target persons interested in "country" or "western" culture, aesthetic, and lifestyle.

20.    On March 27, 2025, Plaintiff, through legal counsel, sent Defendant a formal written cease-and-desist letter.  This letter provided Defendant with actual

notice of Plaintiff's exclusive rights in the COWBOY PILLOWS ('145) and WILL SHAKE MY ASS FOR COWBOYS marks, as well as Plaintiff's distinctive retro-Western trade dress.  The letter explicitly notified Defendant that Plaintiff is a California company and that the negative economic effects of Defendant's promotion and sale of the Infringing Products were being felt in California and this judicial district.  The letter demanded that Defendant immediately cease marketing and selling the Infringing Products. Defendant ignored these demands and willfully continues to advertise, list, and sell the Infringing Products to California residents and fulfill orders to California addresses, in conscious disregard of Plaintiff's intellectual property rights.

21.    Plaintiff has expended substantial sums of money and resources in the promotion of its company and products bearing its asserted marks. As a result of these promotional efforts, the marks are now known to be connected with Plaintiff and recognized in this district and elsewhere as emanating from and authorized by Plaintiff.  The marks have become an asset of incalculable value as a symbol of Plaintiff's business and its quality products.

22.    Plaintiff is informed and believes, and thereupon alleges, that the marketing and sale of Defendant's Infringing Products will erode Plaintiff's incalculable goodwill associated with the marks.

23.    Defendant, after receiving Plaintiff's demand letter referenced above, is on actual notice of Plaintiff's proprietary rights in the marks. Consequently, Defendant's continued infringement is willful and wanton.  Further, given the striking similarity between the Infringing Products and Plaintiff's products, it is reasonable to conclude that Defendant's infringing conduct is willful.

24.    Plaintiff is further informed and believes and thereupon alleges that the presence of Defendant's Infringing Products in the marketplace damages the value of Plaintiff's exclusive right in the marks.  The presence of the Infringing Products in the marketplace using a mark identical to the marks also diminishes the

exclusivity of Plaintiff's genuine products, thereby dissuading potential customers who otherwise would have sought Plaintiff's products.

25.    Upon information and belief, Plaintiff alleges that Defendant's infringing activities has misled and continues to mislead and confuse many customers to buy the Infringing Products believing that they emanate from Plaintiff.

26.    Plaintiff is informed and believes and thereupon alleges that the sale of Defendant's Infringing Products using marks identical to Plaintiff's marks has and will result in lost sales, reduce the business and profit of Plaintiff, and will greatly injure the general reputation of Plaintiff, all to Plaintiff's damage in an amount not yet fully determined.

27.    The exact amount of profits realized by Defendant as a result of its infringing activities, are presently unknown to Plaintiff, as is the exact amount of damages suffered by Plaintiff as a result of said activities.  These profits and damages cannot be accurately ascertained without an accounting.

28.    Further, Defendant's actions are irreparably injuring Plaintiff and will continue unless and until enjoined by this court.

**Maverick's Evasive Business Structure and Prologis-Facilitated Distribution**

29.    Plaintiff is informed and believes, and thereon alleges, that Maverick has intentionally structured its infringing business to conceal its true location, ownership, entity formation, responsible principals, and physical operations from consumers, competitors, intellectual property owners, and law enforcement authorities.

30.    Maverick's concealment is not accidental. Plaintiff is informed and believes, and thereon alleges, that Maverick deliberately withholds its ownership, entity, and location information to make enforcement of trademark rights, service of process, consumer complaints, chargebacks, returns, and regulatory scrutiny more difficult.

Complaint

10

31.    Maverick's evasive business structure is further evidenced by the shipping label captured in this Complaint, which reflects that goods sold by Maverick are shipped from overseas, believed to be China, to a United States distribution point and then forwarded to consumers in California.

32.    Plaintiff is informed and believes, and thereon alleges, that Maverick uses an overseas sourcing and fulfillment chain to obscure the origin of the infringing goods, separate the manufacturing source from the consumer-facing sales channel, and prevent consumers and brand owners from determining where the infringing products are made, stored, and distributed.

33.    Plaintiff is informed and believes, and thereon alleges, that the only United States-based address presently tied to Maverick's infringing sales and fulfillment operations is 5215 S. Boyle Avenue, Vernon, California 90058, a commercial warehouse and distribution property owned, controlled, managed, and/or operated by Prologis.

34.    Plaintiff is informed and believes, and thereon alleges, that Maverick uses the Prologis-owned Vernon facility as a United States distribution center through which infringing goods are received, sorted, stored, processed, and/or shipped to consumers, including consumers in California and this judicial district.

35.    Plaintiff is informed and believes, and thereon alleges, that Prologis leases, licenses, permits, or otherwise provides access to the Vernon facility to Maverick and/or persons or entities acting on Maverick's behalf for fulfillment of Maverick's infringing products. Prologis's facility supplies the domestic infrastructure Maverick needs to sell infringing goods into California while concealing Maverick's true ownership, entity formation, operating address, foreign sourcing chain, and responsible principals.

36.    Plaintiff is informed and believes, and thereon alleges, that Prologis knew, was willfully blind to, or reasonably should have known that its Vernon facility was being used as the only apparent United States-based address for

Maverick's anonymous e-commerce operation and the distribution of products infringing the intellectual property rights of United States brand owners. Prologis is uniquely positioned to identify Maverick and its agents, including through lease records, payment records, access records, warehouse contacts, logistics records, inbound and outbound shipment records, and tenant information associated with the Vernon facility.

37. By permitting the Prologis-owned Vernon facility to be used as Maverick's domestic distribution point, and by deriving rent, fees, or other economic benefit from that use, Prologis has materially assisted, facilitated, aided, and abetted Maverick's infringing scheme and Maverick's efforts to avoid enforcement by Plaintiff and other injured brand owners.

38. Maverick's concealment is further shown by its failure to provide a meaningful returns process for Maverick products. Plaintiff is informed and believes, and thereon alleges, that Maverick offers no returns for the Infringing Products, thereby depriving consumers and brand owners of a routine method for identifying the seller's return address, fulfillment source, responsible entity, importer, or product origin.

39. Plaintiff is informed and believes, and thereon alleges, that Maverick's anonymous e-commerce model, overseas sourcing, Prologis-linked domestic distribution address, lack of contact information, and no-return policy are components of a deliberate scheme to profit from Plaintiff's protected marks and trade dress while making it substantially more burdensome for Plaintiff and other brand owners to investigate, contact, serve, and stop Maverick.

40. As a direct and proximate result of Maverick's concealment and Prologis's substantial assistance, Plaintiff has been forced to expend additional time and resources identifying the responsible parties, tracing the origin and distribution path of the infringing products, and attempting to enforce its rights against an intentionally opaque seller designed to evade accountability.

# FIRST CAUSE OF ACTION

## Federal Trademark Infringement Under 15 U.S.C. § 1114

## (Registered Trademark "COWBOY PILLOWS" U.S. Reg. No. 7,326,145)

## (Against Maverick and DOES 1-20)

41.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 40 as though fully set forth herein.

42.    Plaintiff is the sole and exclusive owner of U.S. Trademark Reg. No. 7,326,145 for the wordmark COWBOY PILLOWS, registered on the Principal Register of the USPTO.  Plaintiff has used the COWBOY PILLOWS mark continuously in interstate commerce since at least August 2022 on clothing items, and the mark has become inherently distinctive and represents invaluable trade goodwill owned by Plaintiff.

43.    Without Plaintiff's authorization or consent, Defendant has advertised, promoted, offered for sale, sold, and distributed in commerce apparel products bearing Plaintiff's registered COWBOY PILLOWS trademark, as well as the confusingly similar synonym 'COWBOY CUSHIONS' on identical apparel goods (including t-shirts, cropped baby tees, and tank tops).

44.    Defendant's unauthorized commercial use of Plaintiff's registered COWBOY PILLOWS trademark and its confusingly similar synonym 'COWBOY CUSHIONS' in connection with the advertisement and sale of identical apparel is highly likely to cause confusion, to cause mistake, or to deceive consumers as to the origin, sponsorship, or association of Defendant's goods with Plaintiff's genuine brand.

45.    Defendant has engaged in these infringing activities with actual knowledge of Plaintiff's exclusive rights, establishing that Defendant's trademark infringement is intentional, willful, and wanton.  Defendant's initial use of COWBOY PILLOWS constitutes a counterfeit of Plaintiff's registered trademark as defined under 15 U.S.C. §§ 1114 and 1127.

Complaint

46.    Defendant's willful infringement has caused, and will continue to cause, irreparable harm and economic injury to Plaintiff, for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116, as well as monetary damages, disgorgement of Defendant's profits, treble damages, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**False Designation of Origin and Unfair Competition**

**Under 15 U.S.C. § 1125(a)**

**(COWBOY PILLOWS Mark and "COWBOY CUSIONS" Copycat Use)**

**(Against Maverick and DOES 1-20)**

47.    Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.    Through continuous and extensive use of its distinctive COWBOY PILLOWS mark in interstate commerce since at least August 2022 on apparel, Plaintiff has developed strong, protectable rights in that mark under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), independently of and in addition to its federal registration.

49.    Without Plaintiff's authorization, license, or consent, Defendant has advertised, marketed, promoted, offered for sale, sold, and distributed apparel products bearing the exact COWBOY PILLOWS mark and the intentionally equivalent synonym "COWBOY CUSHIONS" on identical classes of goods, including t-shirts, cropped baby tees, tank tops, sweatpants, and similar apparel.

50.    Defendant's unauthorized use of COWBOY PILLOWS and the confusingly similar and statutorily equivalent mark "COWBOY CUSHIONS" in connection with identical apparel products constitutes a false designation of origin

and a false and misleading representation of fact that is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Defendant's goods, in violation of 15 U.S.C. § 1125(a)(1)(A).

51.    Defendant's conduct is intentional and willful. Defendant adopted and used the COWBOY PILLOWS mark and then pivoted to the synonym "COWBOY CUSHIONS" only after receiving Plaintiff's cease-and-desist correspondence, while retaining the same fonts, colorways, garment silhouettes, and Western branding, in a deliberate effort to continue trading on Plaintiff's goodwill while attempting to evade liability.

52.    As a direct and proximate result of Defendant's false designation of origin and unfair competition with respect to Plaintiff's COWBOY PILLOWS mark, Plaintiff has suffered and will continue to suffer irreparable harm to its reputation, loss of control over its marks, loss of goodwill, diversion of sales, and other damages in an amount to be proven at trial. Plaintiff has no adequate remedy at law and is entitled to injunctive relief under 15 U.S.C. § 1116, as well as damages, Defendant's profits, treble damages, and attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### False Designation of Origin and Unfair Competition

### under 15 U.S.C. § 1125(a)

### (WILL SHAKE MY ASS FOR COWBOYS Mark)

### (Against Maverick and DOES 1-20)

53.    Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.    Plaintiff owns protectable rights in the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS, which it has continuously used in interstate

commerce on apparel since at least November 30, 2024, which is also the subject of U.S. Trademark Serial No. 98919608.

55. Without Plaintiff's authorization, license, or consent, Defendant has advertised, marketed, promoted, offered for sale, sold, and distributed sweatshirts, hoodies, and related apparel products bearing the identical phrase WILL SHAKE MY ASS FOR COWBOYS, including boxy distressed hoodies and other garments that mimic Plaintiff's products.

56. Defendant's unauthorized use in commerce of the identical WILL SHAKE MY ASS FOR COWBOYS mark on identical apparel goods constitutes a false designation of origin and a false and misleading representation of fact that is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Defendant's goods, in violation of 15 U.S.C. § 1125(a)(1)(A).

57. Defendant's conduct is intentional and willful. Defendant adopted and used the identical WILL SHAKE MY ASS FOR COWBOYS slogan with knowledge of Plaintiff's prior use and USPTO filings, and continued such use after receiving Plaintiff's March 27, 2025, cease-and-desist letter, in order to capitalize on Plaintiff's popularity and social-media-driven demand for the mark.

58. As a direct and proximate result of Defendant's false designation of origin and unfair competition with respect to Plaintiff's WILL SHAKE MY ASS FOR COWBOYS mark, Plaintiff has suffered and will continue to suffer irreparable harm to its reputation, loss of control over its mark, loss of goodwill, diverted sales, and other damages in an amount to be proven at trial. Plaintiff has no adequate remedy at law and is entitled to injunctive relief under 15 U.S.C. § 1116, as well as damages, Defendant's profits, treble damages, and attorneys' fees under 15 U.S.C. § 1117.

Complaint

16

# FOURTH CAUSE OF ACTION

**Trade Dress Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a)**

**(Plaintiff's Brand Trade Dress)**

**(Against Maverick and DOES 1-20)**

59.    Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60.    In connection with the advertising, promotion, and sale of its apparel, Plaintiff has developed and continuously used a distinctive, non-functional, and protectable trade dress (the "Brand Trade Dress"). Plaintiff's Brand Trade Dress consists of the overall look and feel of its apparel line, including, without limitation: (a) the use of oversized and cropped vintage-style silhouettes, such as heavyweight boxy hoodies, ribbed tank tops, cropped baby tees, and sweatpants; (b) the use of bold, Western-inspired typography and distressed text layouts prominently placed across the front or back of the garments; (c) the use of high-contrast color schemes, including red lettering on white, cream, charcoal, and black fabrics, as well as bold black lettering on cream-colored fabrics; and (d) the consistent presentation of provocative, cheeky, country-themed slogans—including but not limited to COWBOY PILLOWS and WILL SHAKE MY ASS FOR COWBOYS—in a cohesive retro-Western aesthetic that, in combination with the foregoing elements, creates a distinctive and immediately recognizable source-identifying appearance for Plaintiff's apparel.

61.    The Brand Trade Dress, viewed as a whole, is non-functional. The combination, arrangement, and selection of the above-described design features are not essential to the use or purpose of the garments and do not affect their cost or quality, but instead serve primarily to identify Plaintiff as the source of the products and to distinguish Plaintiff's apparel from that of others.

Complaint

17

62.     Through Plaintiff's substantial, continuous, and exclusive use of the Brand Trade Dress in interstate commerce, extensive online promotion, and significant social media presence and following, the Brand Trade Dress has become distinctive and has acquired strong secondary meaning among consumers, who recognize it as signifying apparel originating exclusively from Plaintiff.

63.     Without Plaintiff's authorization, license, or consent, Defendant has intentionally adopted and used apparel designs that copy and imitate Plaintiff's Brand Trade Dress, including, by way of example and without limitation, Defendant's "COWBOY CUSHIONS" cropped baby tees, "WILL SHAKE MY ASS FOR COWBOYS" boxy distressed hoodies, and related products that replicate Plaintiff's core silhouettes, Western-style typography, color combinations, and slogan placement.

64.     Defendant's unauthorized use in commerce of apparel incorporating a trade dress that is confusingly similar to Plaintiff's Brand Trade Dress is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Defendant's products by Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

65.     Defendant's trade dress infringement and false designation of origin are willful and deliberate. Defendant copied the overall look and feel of Plaintiff's most popular products with knowledge of Plaintiff's rights and with the intent to trade upon the goodwill, reputation, and consumer recognition associated with Plaintiff's Brand Trade Dress.

66.     As a direct and proximate result of Defendant's willful trade dress infringement and false designation of origin, Plaintiff has suffered and will continue to suffer irreparable harm to its reputation and brand, loss of control over its trade dress, dilution of goodwill, diversion of sales, and other damages in an amount to be proven at trial. Plaintiff has no adequate remedy at law.

67. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendant from further use of any trade dress confusingly similar to Plaintiff's Brand Trade Dress, and to recover damages, Defendant's profits, treble damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1116 and 1117.

## FIFTH CAUSE OF ACTION

### Trademark Dilution under 15 U.S.C. § 1125(c)

### (COWBOY PILLOWS Mark)

### (Against Maverick and DOES 1-20)

68. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 67 as though fully set forth herein.

69. Plaintiff is the owner of the distinctive and famous word mark COWBOY PILLOWS, the '145 Mark, which Plaintiff has used continuously and extensively in interstate commerce in connection with the advertising, promotion, and sale of apparel and related goods.

70. By virtue of Plaintiff's substantial and continuous commercial use of the '145 Mark, Plaintiff's prominent online presence, significant social media following, and extensive unsolicited media and consumer attention, the '145 Mark has become widely recognized by the general consuming public of the United States as designations of source for Plaintiff's goods.

71. The '145 Mark became famous and widely recognized by the general consuming public of the United States as designations of source for Plaintiff's goods long prior to Defendant's adoption, use, and commercialization of the confusingly similar "COWBOY CUSHIONS" designation on apparel.

72. Defendant is making commercial use in commerce of marks that are identical or highly similar to the '145 Mark, including "COWBOY CUSHIONS," in connection with apparel and related goods.

Complaint

19

73. Defendant's use of "COWBOY CUSHIONS," is likely to cause dilution by blurring the distinctiveness of the '145 Mark by creating an association arising from the similarity between Defendant's designations and the '145 Mark that impairs the '145 Mark's ability to identify and distinguish Plaintiff's goods.

74. Defendant's use of "COWBOY CUSHIONS," is also likely to cause dilution by tarnishment of the '145 Mark by creating an association arising from the similarity between Defendant's designations and the '145 Mark that harms the reputation of the '145 Mark through Defendant's lower-quality, knock-off merchandise and its willful copying, evasion, and bad-faith commercial conduct.

75. Defendant commenced and has continued its diluting uses of the '145 Mark after the mark became famous and with willful disregard of Plaintiff's rights, including after receiving Plaintiff's written cease-and-desist notice and being placed on actual notice of Plaintiff's superior rights.

76. Defendant's conduct constitutes trademark dilution by blurring and by tarnishment of the '145 Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

77. As a direct and proximate result of Defendant's willful dilution of the '145 Mark, Plaintiff has suffered and will continue to suffer irreparable harm to the distinctiveness and reputation of the '145 Mark and to the value of the goodwill symbolized by them. Plaintiff has no adequate remedy at law.

78. Pursuant to 15 U.S.C. §§ 1116 and 1125(c), Plaintiff is entitled to injunctive relief to prevent and restrain further dilution of the '145 Mark. Because Defendant's dilution is willful, Plaintiff is also entitled to the remedies set forth in 15 U.S.C. § 1117, including, but not limited to, Defendant's profits, damages, costs of suit, and, in the Court's discretion, enhanced and exemplary damages and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Trademark Dilution under 15 U.S.C. § 1125(c)

### (WILL SHAKE MY ASS FOR COWBOYS Mark)

### (Against Maverick and DOES 1-20)

79.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 78 as though fully set forth herein.

80.     Plaintiff owns protectable rights in the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS, which it has continuously used in interstate commerce on apparel in connection with the advertising, promotion, and sale of apparel and related goods since at least November 30, 2024, which is also the subject of U.S. Trademark Serial No. 98919608

81.     By virtue of Plaintiff's substantial and continuous commercial use of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS, Plaintiff's prominent online presence, significant social media following, and extensive unsolicited media and consumer attention, the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS has become widely recognized by the general consuming public of the United States as designations of source for Plaintiff's goods.

82.     The distinctive word mark WILL SHAKE MY ASS FOR COWBOYS became famous and widely recognized by the general consuming public of the United States as designations of source for Plaintiff's goods long prior to Defendant's adoption, use, and commercialization of the identical "WILL SHAKE MY ASS FOR COWBOYS" designation on apparel.

83.     Defendant is making commercial use in commerce of marks that are identical or highly similar to the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS, including "WILL SHAKE MY ASS FOR COWBOYS," in connection with apparel and related goods.

84.     Defendant's use of "WILL SHAKE MY ASS FOR COWBOYS," is likely to cause dilution by blurring the distinctiveness of the distinctive word mark

WILL SHAKE MY ASS FOR COWBOYS by creating an association arising from the similarity between Defendant's designations and distinctive word mark WILL SHAKE MY ASS FOR COWBOYS that impairs distinctive word mark WILL SHAKE MY ASS FOR COWBOYS ability to identify and distinguish Plaintiff's goods.

85.     Defendant's use of "WILL SHAKE MY ASS FOR COWBOYS," is also likely to cause dilution by tarnishment of distinctive word mark WILL SHAKE MY ASS FOR COWBOYS by creating an association arising from the similarity between Defendant's designations and the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS that harms the reputation of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS through Defendant's lower-quality, knock-off merchandise and its willful copying, evasion, and bad-faith commercial conduct.

86.     Defendant commenced and has continued its diluting uses of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS after the mark became famous and with willful disregard of Plaintiff's rights, including after receiving Plaintiff's written cease-and-desist notice and being placed on actual notice of Plaintiff's superior rights.

87.     Defendant's conduct constitutes trademark dilution by blurring and by tarnishment of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

88.     As a direct and proximate result of Defendant's willful dilution of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS, Plaintiff has suffered and will continue to suffer irreparable harm to the distinctiveness and reputation of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS and to the value of the goodwill symbolized by them. Plaintiff has no adequate remedy at law.

89. Pursuant to 15 U.S.C. §§ 1116 and 1125(c), Plaintiff is entitled to injunctive relief to prevent and restrain further dilution of the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS. Because Defendant's dilution is willful, Plaintiff is also entitled to the remedies set forth in 15 U.S.C. § 1117, including, but not limited to, Defendant's profits, damages, costs of suit, and, in the Court's discretion, enhanced and exemplary damages and reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION

**Statutory Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq.**

**(Against Maverick and DOES 1-20)**

90. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 89 as though fully set forth herein.

91. Defendant has engaged in unlawful, unfair, and fraudulent business acts or practices, inside the State of California, in violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17203 et seq.

92. Defendant's business practices are: (a) 'unlawful' because they constitute federal trademark infringement, trade dress infringement, and unfair competition in violation of the Lanham Act (15 U.S.C. §§ 1114, 1125(a)); (b) 'unfair' because they violate established public policies protecting senior intellectual property owners and fair competition, and inflict severe economic injury on a California business; and (c) 'fraudulent' because they are highly likely to deceive and mislead consumers into purchasing copycat goods under the mistaken belief that they are associated with or emanate from Plaintiff.

93. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent business practices, Plaintiff has suffered injury-in-fact and lost money or property, including lost sales and erosion of brand goodwill.

94. Defendant's conduct has caused and continues to cause irreparable injury to Plaintiff and the general public, for which there is no adequate remedy at law, and Defendant should be preliminarily and permanently enjoined from

Complaint

23

continuing its unfair business practices, and ordered to make restitution of all funds and profits unlawfully acquired, pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

### EIGHTH CAUSE OF ACTION

### (Contributory Trademark Infringement)

### (Against Defendant Prologis, and DOES 1 through 20)

95. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 94 as though fully set forth herein.

96. Defendant Prologis is a commercial real estate entity that conducts business in this district and has at all relevant times acted in concert with and provided substantial assistance to Defendant Maverick in connection with the unlawful use of the Infringing Products.

97. Plaintiff is informed and believes, and thereupon alleges, that Prologis owns, manages, controls, and/or leases commercial properties that are used as a base of operations for the manufacture, marketing, storage, distribution, and sale of products that infringe Plaintiff's federally registered trademarks. Plaintiff is informed and believes, and thereupon alleges, that these properties are purposefully used to target and conduct business with California consumers, including within this judicial district, through marketing, online sales, shipping of products, and related commercial activity.

98. Plaintiff is informed and believes, and thereupon alleges, that the leased premises constitute the primary United States address whereby Defendant Maverick distributes the Infringing Products, and serves as a principal hub for U.S. operations in connection with the infringing conduct.

99. Plaintiff is informed and believes, and thereupon alleges, that Prologis knew or should have known that the property it leased was being used to commit trademark infringement. Plaintiff is informed and believes, and thereupon alleges, that Prologis continued to lease the premises and accept rental payments despite

having actual or constructive knowledge of the infringing activities, and derived substantial financial benefit from doing so.

100.  By knowingly leasing the properties and materially assisting in the operations of the infringing business, Prologis intentionally facilitated, induced, and contributed to the direct trademark infringement committed by Defendant Maverick.

101.  As a direct and proximate result of Prologis' contributory actions, Plaintiff has suffered and will continue to suffer substantial injury, including, without limitation, loss of sales, damage to reputation, and dilution of its trademarks, in an amount to be proven at trial, but greater than $75,000.

102.  The conduct of the Prologis was willful, deliberate, and in conscious disregard of Plaintiff's federally registered trademarks, justifying an award of enhanced damages, profits, and attorneys' fees under 15 U.S.C. § 1117.

**WHEREFORE**, Plaintiff sheisgracielou LLC prays for relief against Defendant as follows:

A.    Relief on the First Cause of Action for Trademark Infringement Under 15 U.S.C. § 1114 for COWBOY PILLOWS, U.S. Reg. No. 7,326,145:

i.    For judgment that Plaintiff owns valid, enforceable, and exclusive rights in the COWBOY PILLOWS mark, U.S. Trademark Registration No. 7,326,145;

ii.    For judgment that Defendant Maverick has infringed Plaintiff's registered COWBOY PILLOWS mark in violation of 15 U.S.C. § 1114;

iii.    For preliminary and permanent injunctive relief under 15 U.S.C. § 1116 enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with any of them, from using COWBOY PILLOWS, COWBOY CUSHIONS, or any other reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation of Plaintiff's registered COWBOY PILLOWS mark in connection with apparel or related goods;

iv.        For an order requiring Defendant  Maverick to deliver up for destruction all products, labels, packaging, advertising, promotional materials, displays, and other materials in Defendant's possession, custody, or control bearing COWBOY PILLOWS, COWBOY CUSHIONS, or any other reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation of Plaintiff's registered COWBOY PILLOWS mark, pursuant to 15 U.S.C. § 1118;

v.        For an order requiring Defendant Maverick  to file with the Court and serve on Plaintiff, within thirty days after entry of any injunction, a written report under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

vi.        For an award of Defendant Maverick's profits, Plaintiff's actual damages, and the costs of the action under 15 U.S.C. § 1117(a);

vii.        For enhanced damages, including up to three times Defendant Maverick's profits or Plaintiff's damages as permitted by 15 U.S.C. § 1117(a), based on Defendant's willful infringement;

viii.        For treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117(b), to the extent Defendant Maverick's conduct is found to constitute intentional use of a counterfeit mark within the meaning of the Lanham Act;

ix.        For statutory damages under 15 U.S.C. § 1117(c), to the extent Plaintiff elects statutory damages for Defendant Maverick's use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

x.        For prejudgment and post-judgment interest as allowed by law; and

xi.        For reasonable attorneys' fees in this exceptional case under 15 U.S.C. § 1117(a).

Complaint

26

B.     Relief on the Second Cause of Action for False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125(a) for COWBOY PILLOWS, U.S. Reg. No. 7,326,145:

i.     For judgment that Defendant Maverick's use of COWBOY PILLOWS, COWBOY CUSHIONS, or any confusingly similar designation in connection with apparel constitutes false designation of origin, false or misleading representation, and unfair competition in violation of 15 U.S.C. § 1125(a);

ii.     For preliminary and permanent injunctive relief under 15 U.S.C. § 1116 enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with any of them, from using COWBOY PILLOWS, COWBOY CUSHIONS, or any confusingly similar designation in any manner likely to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant Maverick's goods by Plaintiff;

iii.     For an order requiring Defendant Maverick to deliver up for destruction all products, labels, packaging, advertising, promotional materials, displays, and other materials in Defendant Maverick's possession, custody, or control bearing COWBOY PILLOWS, COWBOY CUSHIONS, or any confusingly similar designation, pursuant to 15 U.S.C. § 1118;

iv.     For an award of Defendant Maverick's profits, Plaintiff's actual damages, and the costs of the action under 15 U.S.C. § 1117(a);

v.     For enhanced damages as permitted by 15 U.S.C. § 1117(a), based on Defendant Maverick's willful false designation of origin and unfair competition;

vi.     For corrective advertising or other equitable relief necessary to remedy consumer confusion caused by Defendant Maverick's conduct;

vii.      For prejudgment and post-judgment interest as allowed by law; and

viii.     For reasonable attorneys' fees in this exceptional case under 15 U.S.C. § 1117(a).

C.    Relief on the Third Cause of Action for False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125(a) for the distinctive mark WILL SHAKE MY ASS FOR COWBOYS:

i.      For judgment that Plaintiff owns protectable trademark rights in the WILL SHAKE MY ASS FOR COWBOYS mark and that the mark is inherently distinctive, has acquired secondary meaning and is enforceable and exclusive to Plaintiff under 15 USC § 1125(a);

ii.     For judgment that Defendant Maverick's use of WILL SHAKE MY ASS FOR COWBOYS, or any confusingly similar designation, in connection with apparel constitutes false designation of origin, false or misleading representation, and unfair competition in violation of 15 U.S.C. § 1125(a);

iii.    For preliminary and permanent injunctive relief under 15 U.S.C. § 1116 enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with any of them, from using WILL SHAKE MY ASS FOR COWBOYS or any confusingly similar designation in any manner likely to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant Maverick's goods by Plaintiff;

iv.    For an order requiring Defendant Maverick to deliver up for destruction all products, labels, packaging, advertising, promotional materials, displays, and other materials in Defendant Maverick's possession, custody, or control bearing WILL SHAKE MY ASS FOR COWBOYS or any confusingly similar designation, pursuant to 15 U.S.C. § 1118;

v.    For an award of Defendant Maverick's profits, Plaintiff's actual damages, and the costs of the action under 15 U.S.C. § 1117(a);

vi.    For enhanced damages as permitted by 15 U.S.C. § 1117(a), based on Defendant Maverick's willful false designation of origin and unfair competition;

vii.    For corrective advertising or other equitable relief necessary to remedy consumer confusion caused by Defendant Maverick's conduct;

viii.    For prejudgment and post-judgment interest as allowed by law; and

ix.    For reasonable attorneys' fees in this exceptional case under 15 U.S.C. § 1117(a).

D.    Relief on the Fourth Cause of Action for Trade Dress Infringement and False Designation of Origin under 15 U.S.C. § 1125(a) for Plaintiff's Brand Trade Dress:

i.    For judgment that Plaintiff owns protectable, distinctive, non-functional trade dress rights in the Brand Trade Dress described in the Complaint;

ii.    For judgment that Defendant Maverick's use of apparel designs confusingly similar to Plaintiff's Brand Trade Dress constitutes trade dress infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a);

iii.    For preliminary and permanent injunctive relief under 15 U.S.C. § 1116 enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with any of them, from manufacturing, advertising, promoting, offering for sale, selling, distributing, or otherwise using any apparel product, product design, advertising, or promotional presentation that is confusingly similar to Plaintiff's Brand Trade Dress;

iv.     For an order requiring Defendant Maverick to deliver up for destruction all products, labels, packaging, advertising, promotional materials, displays, and other materials in Defendant Maverick's possession, custody, or control that embody or display any trade dress confusingly similar to Plaintiff's Brand Trade Dress, pursuant to 15 U.S.C. § 1118;

v.     For an award of Defendant Maverick's profits, Plaintiff's actual damages, and the costs of the action under 15 U.S.C. § 1117(a);

vi.     For enhanced damages as permitted by 15 U.S.C. § 1117(a), based on Defendant's willful trade dress infringement and false designation of origin;

vii.     For corrective advertising or other equitable relief necessary to remedy consumer confusion caused by Defendant Maverick's conduct;

viii.     For prejudgment and post-judgment interest as allowed by law; and

ix.     For reasonable attorneys' fees in this exceptional case under 15 U.S.C. § 1117(a).

E.     Relief on the Fifth Cause of Action for Trademark Dilution under 15 U.S.C. § 1125(c) for COWBOY PILLOWS, U.S. Reg. No. 7,326,145:

i.     For judgment that Plaintiff's COWBOY PILLOWS mark is distinctive and famous within the meaning of 15 U.S.C. § 1125(c);

ii.     For judgment that Defendant Maverick's use of COWBOY CUSHIONS, COWBOY PILLOWS, or any other identical or highly similar designation is likely to cause dilution by blurring and/or dilution by tarnishment of Plaintiff's COWBOY PILLOWS mark in violation of 15 U.S.C. § 1125(c);

iii.     For preliminary and permanent injunctive relief under 15 U.S.C. §§ 1116 and 1125(c) enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or

participation with any of them, from using COWBOY CUSHIONS, COWBOY PILLOWS, or any other identical or highly similar designation likely to dilute Plaintiff's COWBOY PILLOWS mark by blurring or tarnishment;

iv.       For an award of Defendant Maverick's profits, damages, costs of suit, enhanced damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1117(a) and 1125(c), based on Defendant's willful dilution;

v.       For prejudgment and post-judgment interest as allowed by law; and

vi.       For such additional equitable relief as is necessary to prevent and restrain further dilution of Plaintiff's COWBOY PILLOWS mark.

F.       Relief on the Fifth Cause of Action for Trademark Dilution under 15 U.S.C. § 1125(c) for the distinctive word mark WILL SHAKE MY ASS FOR COWBOYS:

i.       For judgment that Plaintiff's WILL SHAKE MY ASS FOR COWBOYS mark is distinctive and famous within the meaning of 15 U.S.C. § 1125(c);

ii.       For judgment that Defendant Maverick's use of WILL SHAKE MY ASS FOR COWBOYS, or any other identical or highly similar designation, is likely to cause dilution by blurring and/or dilution by tarnishment of Plaintiff's WILL SHAKE MY ASS FOR COWBOYS mark in violation of 15 U.S.C. § 1125(c);

iii.       For preliminary and permanent injunctive relief under 15 U.S.C. §§ 1116 and 1125(c) enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with any of them, from using WILL SHAKE MY ASS FOR COWBOYS or any other identical or highly similar designation likely to

dilute Plaintiff's WILL SHAKE MY ASS FOR COWBOYS mark by blurring or tarnishment;

iv.    For an award of Defendant Maverick's profits, damages, costs of suit, enhanced damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1117(a) and 1125(c), based on Defendant's willful dilution;

v.    For prejudgment and post-judgment interest as allowed by law; and

vi.    For such additional equitable relief as is necessary to prevent and restrain further dilution of Plaintiff's WILL SHAKE MY ASS FOR COWBOYS mark.

G.    Relief on the Seventh Cause of Action for Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq.

i.    For judgment that Defendant Maverick has engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code § 17200 et seq.;

ii.    For preliminary and permanent injunctive relief under Cal. Bus. & Prof. Code § 17203 enjoining Defendant Maverick, and its officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with any of them, from continuing the unlawful, unfair, and/or fraudulent business acts or practices alleged in the Complaint;

iii.    For restitution and disgorgement of all money or property that Defendant Maverick acquired from Plaintiff, Plaintiff's customers, or the consuming public through the unlawful, unfair, and/or fraudulent business acts or practices alleged in the Complaint, as permitted by Cal. Bus. & Prof. Code § 17203;

iv.    For an order requiring Defendant Maverick to provide an accounting of all revenues, profits, gains, benefits, and other consideration

received as a result of the unlawful, unfair, and/or fraudulent business acts or practices alleged in the Complaint;

v.    For prejudgment and post-judgment interest as allowed by law; and

vi.    For such other equitable relief as the Court deems necessary to prevent Defendant Maverick's unfair competition and restore to Plaintiff and the consuming public any money or property wrongfully obtained by Defendant.

H.    Relief on the Eighth Cause of Action for Contributory Trademark Infringement:

i.    For all relief available for contributory trademark infringement, including injunctive relief barring Prologis from facilitating, permitting, or materially contributing to the storage, shipment, sale, or distribution of infringing products;

ii.    For recovery of Plaintiff's actual damages;

iii.    For disgorgement of Prologis's profits attributable to the infringement; and

iv.    For enhanced damages, attorneys' fees, and costs as permitted under 15 U.S.C. § 1117.

I.    General Relief Applicable to All Causes of Action

i.    That Defendant be ordered to compensate Plaintiff in an amount equal to the amount of marketing and advertising costs that Defendant has expended to market and advertise its products, so that Plaintiff may run its own marketing and advertising campaign to disassociate the products of Plaintiff and Defendant, mitigate the damage caused by the likelihood of confusion, and to recoup its lost market share or damages to its marketing and reputation;

ii.    That Defendant be directed to file with this court and serve upon Plaintiff within 30 days after the service of the injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

iii.    For costs of suit as permitted by law;

iv.    For prejudgment and post-judgement interest as permitted by law; and

v.    For such other and further legal and equitable relief as the Court deems just and proper.

DATED:  July 28, 2026                    WEEKS NELSON


                                        /s/ Ariel Redfern_____
                                        ARIEL REDFERN
                                        Attorney for Plaintiff


## JURY DEMAND

Plaintiff Sheisgracielou LLC hereby requests a trial by jury in this matter.

DATED:  July 28, 2026                    WEEKS NELSON


                                        /s/ Ariel Redfern_____
                                        ARIEL REDFERN
                                        Attorney for Plaintiff

Complaint

34